Mr. Offenham seeks his opportunity and the opportunity for review of the one claim, the one Fifth Amendment claim, that he was entitled to the re-administration of Miranda warnings after the polygraph examination that took place during his interrogation. In the post-conviction case, he reached an agreement with the state, and the language of that agreement should be dispositive here, and that is that his agreement encompassed the authority, the rights, the capability of raising without preservation issues arising from his motion to suppress and at the suppression hearing. Mr. Offenham. Counsel, can I ask you this? Let's say that the state PCR proceeding had actually been litigated to conclusion rather than settled, right? Would you have, would your client have been entitled to the relief that you just described? I mean, it would, in part, I think, depend on the judgment issued by the post-conviction court. But the agreement, I think, is very much part of this court's adequacy analysis, that is, analysis of the adequacy of the state's non-preservation ruling. Well, I guess, let me put it in these terms. I'm looking at that first part of the agreement, right, that says the state agrees that petitioner shall be granted another direct appeal from the conviction and sentence to the extent that he is allowed to contest the court's denial of petitioner's pre-trial motion, blah, blah, blah, right? Basically, we're just going to do a, we're going to have a do-over. We're going to put you back in the position you should have been in had your counsel done the right thing initially. And that is, it seems to me, that's the most that your client could have hoped to have won had he prevailed, had this PCR proceeding been litigated and had he prevailed. And yet the relief you're trying to ascribe to the settlement agreement seems to me much broader than that. And I don't understand how you could mesh those two things together. Well, I think they're meshed because he did rely on that agreement and those concessions and those terms in waiving and giving up all his other post-conviction claims. So he obtained a benefit by gaining this right to raise claims arising from the suppression hearing without preservation. And in return, he dropped the rest of his case. But the most he could have won had he not dropped the case is less than what you're claiming the state gave you. And I don't see why in the world would the state have decided to do that. That makes no sense to me. I think it makes sense because the Miranda issue was fully aired and litigated. The precise legal theory that the council raised in the new appeal was not advanced by the ineffective lawyer who performed terribly in the first go-round. So the state saw fit to allow him a broader leeway in the second proceeding to litigate issues, again, arising from the suppression hearing. Let me say what I understand. First of all, you needed an agreement because there was a different and separate and overall procedural default of any Miranda claim, which was basically that the suppression hearing was not in the record and wasn't referenced and in that sense wasn't preserved. Is that right? Right. In other words, it was just everything about the Miranda hearing that was out because of what the trial lawyer had done. And that was what generated the need for an agreement to preserve something or other, right? But not because of any specific issue default, but because the necessary procedure for saving anything about the suppression hearing had been foregone. Is that what you're saying? Yeah, he just lost his right to litigate. I'm sorry? Yeah, he lost his right to litigate the suppression. Anything about the suppression. Right. So then I thought what you were saying in your brief was that basically there was, if that hadn't happened, you could have raised the claim you're raising now because it was sufficiently close and involved with what was litigated in the trial court that it should not have been considered procedurally defaulted if none of this had happened. Is that what you're saying? Well, I think that if the issue had reached the appellate court in the very first appeal, that the state's preservation ruling may very well be an adequate decision on procedural grounds by that court applying state preservation rules. I think things did change. It would have been okay. So you are relying, so Judge Watford's right, you are relying fairly exclusively on the agreement. Well, I think there, I hesitate. Of not only the procedural default that generated it, but other procedural defaults connected to the grand issue. The only thing I'm resisting is the word exclusively because I think the settlement agreement and the ensuing preservation decision by the appellate court in the second appeal kind of has to be examined together to determine whether the state applied its rules exorbitantly in that second appeal. Well, but then it becomes a question that's not about a procedural default anymore, that it's about the construction of a settlement agreement. I mean, that very much plays a significant part because of the wording. The way you're describing it, it doesn't sound that it's about a procedural default anymore. But you just told me that you think the procedural default, we would have to respect it if it wasn't for the agreement. Well, that's because it reached the appellate court and the appellate court decided it wasn't going to hear the appeal based on state preservation rulings. So I do see those as fitting together and part of the overall analysis is whether or not the preservation ruling was adequate given what its context was, what had transpired before that. I mean, the exorbitant exception, frankly, I'd never even heard of it. Obviously, after Fay versus Noya, it has to be taken as extremely narrow and has been. And the notion that it would apply to what is essentially a construction of a state contract seems unlikely to us. Well, I think the state does have to abide by the state contract. And the state contract used, which they drafted and which the post-conviction court adopted verbatim, was very permissive. And it allowed him to raise issues arising from the suppression hearing and without preservation. The state drafted that very agreement with those very terms. And that's why when it got to the appellate court with this Miranda issue that did arise from the hearing, the appellate court's decision was incumbent. It should have reached the issue. And whether or not it felt it could under its preservation rules or whether or not it decided it correctly under state rules, this court has to decide the federal default issue as a federal question. And the federal courts say he didn't get a fair shake. That he did not, that the way that the things played out, both with the underlying and effectiveness leading to the post-conviction, leading to the agreement, which again dropped the rest of his petition for this one opportunity to raise issues arising from the hearing, that altogether that claim should be heard in federal court. Can I ask you, the review standard, the Oregon Court of Appeal was interpreting the post-conviction judgment, correct? Yes. Okay. Should we treat that as a factual question there for review at under 2254E1, presumption of correctness? I think that the more correct analysis is that which the court provides in Lee v. Kemna, is was the state's application of its rules exorbitant under the circumstance? And that default kind of context or rubric is, in my view, the correct analysis rather than whether or not the court made a correct factual determination under state proceedings. Again, this is, I see it as a federal question of a federal, whether there's been a federal procedural default. And because the state court applied its rules exorbitantly. It didn't apply a state procedural rule to that. It applied to a construed contract. Well, it construed it in a way that we contest was unreasonable and should be rejected by this court. And if I could just, I see I'm out of time, but I can, I think there's one, I didn't get a chance to say it, but I think there's one main reason that the ruling was exorbitant in the way that they read the contract. The court invoked its preservation rules, which are in part to make sure that the other side has an opportunity to reply and that the record is fully developed. The state in the second appeal was able to fully litigate this issue and argue it. They have a very detailed, pointed argument against the very issue he raised. There's not one suggestion or statement in that answering brief that there was somehow a flaw in the way that the record developed or that they didn't get an opportunity. Whereas they made that very argument on the other issue counsel raised, which we're not pursuing here, the due process right to communicate issue. They point out that that issue would have had a different factual development if it had been specifically raised below. They didn't do that with this one issue, this one Morand issue. It was a clean issue. It was a clean legal issue. And there was a full opportunity for the state to respond. And that's why the appellate court should have reached it. And given that it did not, this court should allow him one chance to argue that issue in federal court. Thank you. Okay, thank you very much. Good morning. May it please the court. My name is Cecil Renish-Smith and I represent Superintendent Corsi in this appeal. In all my years of arguing federal habeas cases, this is the first time I've had one that turned on Oregon contract law. And so we'll start with that. The Oregon Court of Appeals found as fact that when entering into the settlement agreement when it was incorporated into the post-conviction court's judgment, that the parties intended to allow petitioner to take a direct appeal from his conviction at which he could raise the issues that he would have been able to raise on appeal had his trial counsel gotten the evidence of the suppression hearing and the confession into the record of the stipulated facts trial. So as Judge Watford pointed out, what he got and what he was asking for in post-conviction was the right to take a direct appeal at which he could litigate the issues that he had raised during the suppression hearing and that he had lost on. And that is what, when they reached their settlement agreement, the parties agreed to. And when he... The language is broader than that, isn't it? I'm sorry? Isn't the language broader than that? There's one phrase in the judgment that says, without regard to preservation, and that is what petitioner has seized upon to say, that means not only without regard to my trial counsel's failure to preserve the specific arguments that I had made, but without regard to preservation at all. And the Oregon Court of Appeals looked at that and looked at the rest of the agreement and looked at the extrinsic evidence of the events that led to that agreement and determined as a matter of fact that that broader interpretation that petitioner is asking this court to accept was not the party's intent. And that factual determination is entitled to deference by this court. That would be under 2254A1. Correct. And so I think that's really all the superintendent has to say, in addition to the arguments that I have made in the briefing. I'm happy to address questions that the court may have. It appears what we're looking at is Section 3 of the agreement. It says, defendant may argue issues arising from the March 23, 2006 hearing of the Federal Department of Justice, and that is specifically included are issues involving police misconduct and the defendant's right to communicate. In my interest, first of all, it seems plain, therefore, that the first sentence is broader than the second, i.e., the second is only two examples. Right. And, moreover, police misconduct, one of the arguments is what this is about police misconduct, i.e., not having a grand jury is the right time. Correct. And this is where you need to go back and look at the evidence that was surrounding the creation of this agreement and what was brought up in the suppression hearing, because everyone agrees, everyone agreed that he should have been allowed to have a direct appeal at which he could raise the issues that were litigated in the suppression hearing. And those issues, there were five. Three of them were expressly set forth in his motion, and those were discovery violations that had already occurred, the fact that they did not tell him that he was being recorded, and other discovery violations that continued to occur. At the hearing, when the then-defendant, now petitioner, testified, he testified that he was never given any Miranda warnings, and he testified that he was denied his right to counsel when he invoked it, that he was told that he'd already waived that, that he couldn't have it. He also brought up the taking away of his telephone, which goes to his right to communication. So those were the issues that arose out of the suppression hearing, either by his motion or in his argument. And the reference to police misconduct had to do with the taking away of his cell phone and the denial of his right to counsel when he invoked it by telling him that he had already waived it. When he got his second appeal and he filed his brief in the Oregon Court of Appeals, none of those five issues was raised, except for how I believe the right to communication may have been. But instead, he raised this entirely new Miranda issue, which was even if I had been given my Miranda warnings, which the trial court had found, as a matter of fact, he had, I should have been re-Mirandaized after the polygraph examination. That was the first time that it had ever been brought up. And that was the preservation issue that eventually led to the denial of his appeal. That was something that had never been brought up in the trial court originally. So even if his attorney at that time had not been inadequate and had done what he needed to do to set up the appeal, petitioner would not have been allowed under the Oregon Rules of Preservation to make that argument. And so he couldn't have made it the first time. He shouldn't have been able to make it the second time. As Judge Watford pointed out, there is no reason that the state would ever have agreed to that type of contract agreement. But I have to go back to my original point, which is the Oregon Court of Appeals determined as fact that that was not part of the agreement. And this court must defer to that because it was not an unreasonable determination based on the record before it. Unless the court has any questions, I would just ask that this court affirm the judgment. Thank you very much. Thank you, Your Honor. I just turn the court's attention to page 250 at the bottom of the excerpt of record, and it continues on to the next page, and it specifies what can be raised. And as we pointed out in our brief, it refers to issues involving police misconduct. That's the term chosen by the state, written by the state, adopted verbatim by the post-conviction court. The truth is that, well, not to give you a random word, what is the right time to raise the policy of police misconduct? And so I wonder what ordinarily means by police misconduct. Well, I mean— It's not abuse or— I assume what that was referring to was the postage in his telephone book. Well, I mean, the case law refers to Miranda violations as police misconduct. The Supreme Court cases, the state appellate cases, so the very term police misconduct is what Miranda is talking about. So by choosing that language, they encompassed a Miranda issue, not any and all Miranda issues, not any and all right-to-counsel issues, but ones which arose from the hearing. Do you disagree that the Oregon Court of Appeals made a factual determination based on extrinsic evidence— They didn't. —that your reading was incorrect? They did refer to the context, so they didn't necessarily look backwards to circumstances leading up to it, but ultimately the language is here. Thank you, Your Honor. Thank you very much.
judges: Fisher, Berzon, Watford